UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SPENCER,

        Plaintiff,

                                                            Case No. 15-cv-12209

v.

                                                            HON. MARK A. GOLDSMITH

HURON COUNTY, et al.,

        Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANTS' JOINT MOTION TO COMPEL PLAINTIFF TO ATTEND
AN INDEPENDENT MEDICAL EXAMINATION (Dkt. 35)**

      In this civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff Anthony Spencer challenges the lawfulness of his arrest by officers of the Huron County Sheriff's Office. See generally Compl. (Dkt. 1). Defendants have filed a joint motion to compel Spencer to attend an independent medical examination (Dkt. 35). The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). As discussed below, the Court grants the motion.

**I.  STANDARD OF DECISION**

      Pursuant to Federal Rule of Civil Procedure 35, the Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). To secure such an order, the moving party has the burden of demonstrating that: (i) the opposing party's physical or mental condition is in controversy, and (ii) there is good cause to require the opposing party to submit to the examination. Benchmaster, Inc. v. Kawaelde, 107 F.R.D. 752, 753 (E.D. Mich. 1985); Fed. R. Civ. P. 35(a)(2)(A) ("The order [for examination] may be made only on motion

1

for good cause and on notice to all parties and the person to be examined."). A plaintiff clearly places his or her "mental or physical injury . . . in controversy" when he or she seeks damages for a mental or physical injury, thereby providing "the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964) (recognizing that, in such situations, the two requirements for an examination can be satisfied based on the pleadings alone).

## II. ANALYSIS

In his complaint, Spencer states that, as a result of his allegedly unlawful arrest, he has suffered "mental and emotional distress[,] and loss of the ordinary pleasures of life." Id. ¶ 51. According to Defendants, Spencer has placed his mental condition in controversy because he claims that he suffers from post-traumatic stress disorder, as well as severe depression and anxiety. Defs. Mot. at 1 (Dkt. 35); Spencer Dep. at 101-104 (Dkt. 35-2).[1] Consequently, Defendants have requested that Spencer submit to independent medical examination. Defendants originally proposed that Dr. Krista Freece, Ph.D., in Canton, Michigan would perform the examination. Defs. Mot. at 1. However, after the issues were fully briefed, Defendants discovered that Dr. Freece had taken a position in California, requiring his departure from Michigan on or before September 15, 2016. Def. Supp. Br. at 1-2 (Dkt. 43). Therefore, Defendants now request that Dr. Renee Applebaum, Ph.D., perform the examination in Bingham Farms, Michigan. Id. at 2-3.

Although Spencer does not generally contest Defendants' request for an independent medical examination, he has sought to have a variety of conditions placed on the examination. See generally Pl. Resp. at 8-13 (Dkt. 39). The Court considers each of these conditions in turn.

---

[1] Spencer does not dispute that he suffers from various psychological problems following his arrest. Pl. Resp. at 7 (Dkt. 38).

### A. Condition One — Require Defendants to Find a Medical Examiner Closer in Proximity to Plaintiff or Reimburse Plaintiff's Travel Expenses

Spencer claims that he lives in Bad Axe, Michigan, and Dr. Freece's office is located in Canton, Michigan. Pl. Resp. at 8. According to Spencer, a roundtrip distance between the two locations is approximately 248 miles. Id.[2] Due to this distance, Spencer first argues, without citation to authority, that "Defendants should be required to find a medical examiner closer to Plaintiff's home." Id. Spencer then argues, again without citation to authority, that, if the examination is to be performed by Dr. Freece in Canton, "Defendants should be required to reimburse Plaintiff for his mileage at the current IRS rate." Id.

Although Defendants do not have an absolute right to compel an examination by a particular physician of their choosing, absent a showing of bias or prejudice, the Court will not disturb the Defendants' choice of medical examiner. McKitis v. Defazio, 187 F.R.D. 225, 227 (D. Md. 1999); Great W. Life Assur. Co. v. Levithan, 153 F.R.D. 74, 76 (E.D. Pa. 1994); Powell v. United States, 149 F.R.D. 122, 124 (E.D. Va. 1993); Liechty v. Terrill Trucking Co., 53 F.R.D. 590, 591 (E.D. Tenn. 1971). The rationale for this approach is that, if a "plaintiff may select his own doctor to testify as to his physical [or mental] condition, fundamental fairness dictates that a defendant shall have the same right[.]" 8B Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2234.2 at 274 (2010).

Spencer did not challenge Dr. Freece's qualifications or provided any evidence to suggest bias on the part of Dr. Freece. Nor has Spencer raised such concerns about Dr. Applebaum following Defendants' supplemental brief. Therefore, the Court rejects a condition requiring

---

[2] According to Defendants, Dr. Applebaum's office is located in Bingham Farms, Michigan, see Defs. Supp. Br. at 3, which is approximately 26 miles closer to Spencer than Dr. Freece's Canton office.

Defendants to choose a medical examiner closer to Spencer based purely on the ease of transportation for the examination.

Spencer's second argument about travel reimbursements also lacks merit. "The general rule is that the party being examined must pay his or her own travel expenses to an examination in the forum state." McCloskey v. United Parcel Servs. Gen. Servs. Co., 171 F.R.D. 268, 270 (D. Ore. 1997) (reasoning that the plaintiff chose the forum to bring suit and should be "expected to pay the costs of the litigation carried on in that forum"); Ornelas v. S. Tire Mart, LLC, 292 F.R.D. 388, 399-400 (S.D. Tex. 2013); 8B Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2234 at 258 (2010) ("The party being examined must pay his or her own expenses for coming to the examination and bear the loss of time thus caused."). There is an exception to this rule if the party being examined demonstrates that he or she will suffer an undue financial hardship. McCloskey, 171 F.R.D. at 270; Ornelas, 292 F.R.D. at 400.

Spencer does not argue that traveling to the examination would result in an undue financial hardship. Nor has Spencer provided any reason as to why he should not pay his own travel expenses for the examination, just as he will eventually be obliged to travel approximately the same distance to Detroit for his trial. See Dixon v Greyhound Lines, Inc., No. 13-179-JJB-RLB, 2014 WL 37284, at *3 (M.D. La. Jan. 6, 2014).

Nevertheless, the parties may agree to the imposition of certain conditions. In their reply, Defendants state that they have no objection to reimbursing Spencer for mileage at the IRS's standard mileage reimbursement rate. Defs. Reply at 1 (Dkt. 40).

Accordingly, the Court concludes that a condition requiring Defendants to find a medical examiner closer to Spencer is not warranted. However, the parties have agreed that Defendants

will reimburse Spencer's travel expenses for the examination, and this condition shall be included in the proposed order requiring an independent medical examination.

### B. Condition Two — No Invasive Procedures Unless Ordered by Court

Without citation to authority, Spencer argues that he "should not be required to undergo any type of invasive procedures by the examiner" during the psychological examination, "unless specifically ordered to do so by this Court." Pl. Resp. at 9.

At this point, nothing has been presented to suggest that the examination will involve any sort of physically invasive procedure, or that an unorthodox or potentially harmful technique will be used during the examination. See Defs. Mot. at 15 (cm/ecf page); In re Certain Asbestos Cases, 112 F.R.D. 427, 433 (N.D. Tex. 1986) ("Invasive procedures that are medically approved have been allowed upon living persons by authority of Rule 35."); see also id. (the fact that the procedure is invasive "does not remove it from the ambit of a Rule 35(a) physical examination"); Calderon v. Reederei Claus-Peter Offen GmbH & Co., 258 F.R.D. 523, 529 (S.D. Fla. 2009) ("Courts often permit 'routine procedures' to be performed during a Rule 35 examination.").

Moreover, it is unclear what type of invasive procedures Spencer envisions occurring during the mental examination. Certainly there are procedures that could be characterized as physically invasive, such as blood tests (and unlikely to occur in this case). Procedures could also be considered to be mentally invasive. See Gattegno v. Pricewaterhousecoopers, LLP, 204 F.R.D. 228, 233 (D. Conn. 2001) ("Although a mental examination is a potentially invasive procedure, the plaintiff's right to avoid the invasion must be balanced against defendant's right to a fair trial."). Spencer does not seek to distinguish the two.

Nevertheless, Defendants do not object to this condition. Defs. Reply at 1. Therefore, a condition preventing invasive procedures shall be included in the proposed order requiring an independent medical examination.

**C. Condition Three — Recording the Examination**

Unless the opposing party demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination. Gohl v. Livonia Pub. Schs., Nos. 12-CV-15199, 13-CV-11687, 13-CV-12012, 2015 WL 1469749, at *5 (E.D. Mich. Mar. 30, 2015) (citing Lahar v. Oakland Cnty., No. 05-72920, 2006 WL 2269340, at *8 (E.D. Mich. Aug. 8, 2006)). The party seeking to allow a recording of an examination bears the burden of demonstrating either a special need or good cause for the request. Id. (citing Williams v. Serra Chevrolet Auto., LLC, No. 12-11756, 2013 WL 3467314, at *1 (E.D. Mich. July 10, 2013)). A party may demonstrate good cause or a special need when bias exists or when a party is incompetent. Id.

Spencer argues that recording the examination is necessary because Defendants' expert "is performing the examination on behalf of the defense who will also be paying for the examination." Pl. Resp. at 10. Because of this, Spencer contends that the expert is not "neutral" or "independent." Id.; see also id. ("Quite simply, Dr. Freece has been hired for no other purpose other than to advance the interests of Defendants. Thus, she can by no means be 'independent.'"). The Court finds that Spencer's justification is insufficient to demonstrate either good cause or a special need to have the examination recorded.

While a defendant's psychological expert may not be truly "neutral" or "independent," given the adversarial nature of litigation, the mere fact that parties are in opposition and hire experts does not, in itself, constitute a sufficient bias attributable to the expert that would require

6

recording of the examinations.  Gohl, 2015 WL 1469749, at *5 (citing Elder v. Harrison Twp., No. 10-cv-13144, 2014 WL 6668696, at *5 (E.D. Mich. Nov. 24, 2014)).  As this Court has already noted, "[t]o hold otherwise would mean that virtually every examination could be recorded, a contradiction of the majority rule requiring a special need."  Id.

In support of his argument that a recording is appropriate, Spencer also points to language in a Michigan Court Rule concerning the presence of an attorney during a medical examination.  Pl. Resp. at 9 (citing Mich. Ct. R. 2.311(A)).  This argument is unavailing.

While there may be a difference between federal and state law on this issue, this Court is addressing a procedural question under federal law, which is controlling.  Durmishi v. Nat'l Cas. Co., 720 F. Supp. 2d 862, 874 (E.D. Mich. 2010); accord Stefan v. Trinity Trucking, LLC, 275 F.R.D. 248, 250 (N.D. Ohio 2011).  And under federal law, federal courts do not allow the recording of a medical examination absent good cause or a special need, which Spencer has failed to demonstrate in this case.

Accordingly, the Court concludes that a condition allowing the examination to be recorded is not warranted.  Spencer will still have the opportunity to challenge any inaccuracies in the expert's findings through Spencer's own testimony, the testimony of his witnesses, and cross-examination of the expert.

### D. Condition Four — Access to Examiner Notes, Dictation Tapes, and Related Documents

Without citation to any authority, Spencer argues that his counsel "should be entitled to obtain copies of the examiner's notes, dictation tapes, or any other documents used and/or referenced in generating the examiner's report."  Pl. Resp. at 11.

The Court finds that Spencer is entitled to these documents.  See Castillo v. W. Beef, Inc., No. CV 04-4967 NGG ETB, 2005 WL 3113422, at *3, *5 (E.D.N.Y. Nov. 21, 2005)

(ordering the defendant to provide the plaintiff with the "doctor's notes, test data, and any other documents generated in connection with the examination"); Hirschheimer v. Associated Metals & Minerals Corp., 1995 WL 736901, at *5 (S.D.N.Y. Dec. 12, 1995) (ordering the defendant to disclose raw data that formed part of the basis for the expert testimony). Defendants do not object to this condition. Defs. Reply at 3.

Therefore, the proposed order shall include a condition requiring Defendants to provide copies of the examiner's notes, dictation tapes, or any other documents used and/or referenced in generating the expert's report.

### E. Condition Five — Taking Deposition of the Examiner at a Reasonable Rate

Spencer notes that, if the examination goes forward, it will occur after the close of discovery, which was August 1, 2016. Pl. Resp. at 11; see also 11/5/2015 Order at (Dkt. 18). Without citation to any authority, Spencer then argues that his counsel should "be permitted to take the discovery deposition of the examiner after the close of discovery and before any trial deposition may be taken of the examiner." Pl. Resp. at 11-12. Spencer also requests that there be a condition that he "only pay a reasonable rate for the time the examiner spends in deposition," because, according to Spencer, some examiners "charge exorbitant and unreasonable deposition fees." Id. at 12.

Rule 35 states that it "does not preclude . . . deposing an examiner under other rules." Fed. R. Civ. 35(b)(6). Such a deposition can be taken under two circumstances: (i) "when the party which requested the examination intends to use the examiner as a witness at trial," Brown v. Ringstad, 142 F.R.D. 461, 463 (S.D. Ia. 1992); Fed. R. Civ. P. 26(b)(4)(A), or (ii) "upon a showing of exceptional circumstances under which it is impractical for the party seeking

8

discovery to obtain facts and opinions on the same subject by other means," Fed. R. Civ. P. 26(b)(4)(B).

If Defendants intend on using Dr. Applebaum as a witness at trial, the Court concludes that Spencer may depose the examining physician following receipt of Dr. Applebaum's report. Ren v. Phoenix Satellite Television (US), Inc., 309 F.R.D. 34, 36 (D.D.C. 2015) (after receiving the Rule 35 examination report, the plaintiff will "then have the opportunity to depose the physician"); Castillo, 2005 WL 3113422, at *2 (E.D.N.Y. Nov. 21, 2005). Dr. Applebaum's charged rate for time spent at the deposition shall be reasonable. See Williams, 2013 WL 3467314, at *3.

In their reply, Defendants state that they have no objection to Spencer deposing their expert after the discovery cut-off date. Defs. Reply at 3-4. They also claim that Dr. Applebaum charges $750 for the first hour of deposition and $250 for each additional hour thereafter. Defs. Supp. Br. at 2. The Court finds this rate reasonable.

Therefore, to accommodate both the examination and the subsequent deposition of Dr. Applebaum, the Court allows this discovery only beyond the now-expired discovery cut-off. The examination shall be completed by September 30, 2016, and the Dr. Applebaum's deposition shall be completed by October 28, 2016.

### F.  Condition Six — Cancellation Fees

Spencer takes issue with language found in Defendants' proposed order regarding a fee for the cancellation of the examination. Pl. Resp. at 12. Spencer states that the proposed order does not identify the amount of the cancellation fee. Id. Nor does the order account for emergency situations that would prevent a timely attendance. Id. Therefore, Spencer argues that

9

the cancellation requirement is unreasonable and should not be included in an ordering requiring the independent medical examination.  Id. at 12-13.

In their reply, Defendants state that, because the examination will be set for a mutually convenient date and time, there is "no reason that [Spencer] would be unavailable to appear for the exam and avoid any cancellation fees."  Defs. Reply at 4.  Defendants originally clarified that Dr. Freece charges $750 for appointments that are cancelled with less than 72 hours' notice.  Id.  For Dr. Applebaum, her cancellation fee is $1000 if her office is not notified of the cancellation 48 hours of more before the examination time.  Defs. Supp. Br. at 2.

As Spencer's attendance at the examination will be mandated by an order from this Court, his failure to attend would not only cause an inconvenience to Dr. Applebaum, but it would also be in violation of the order.  If Spencer fails to attend the examination without proper notice, he will bear the costs associated with the cancellation.  See Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 739-740 (D. Md. 2003) (ordering the plaintiff to pay the doctor's cancellation fee where, after the plaintiff sent the defendant a letter declaring that she would not appear for the examination, the defendant notified the plaintiff that the doctor would charge a $500 cancellation fee if the plaintiff failed to appear); see also id. at 739 ("According to the plain language of Rule 37(b)(2), the court shall require the disobedient party to pay reasonable expenses caused by the failure" to appear for the independent medical examination).

Therefore, the proposed order shall include a condition that Spencer shall bear the cost of cancelling the examination if he does not provide Dr. Applebaum's office with 48 hours' notice.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Spencer has placed his mental condition in controversy and there is good cause for an independent medical examination.  Therefore, the

Court grants Defendants' motion to compel Spencer to attend an independent medical examination (Dkt. 35).

The parties shall submit a proposed stipulated order specifying the time, place, manner, and scope of the examination on or before September 9, 2016. See Fed. R. Civ. P. 35(a)(2)(B). The proposed order shall also include the following conditions: (i) Defendants shall reimburse Spencer's transportation expenses relating to the examination; (ii) Dr. Applebaum shall not perform any invasive procedures during the psychological examination unless specifically permitted to do so by this Court; (iii) Defendants shall provide copies of the examiner's notes, dictation tapes, or any other documents used and/or referenced in generating Dr. Applebaum's report; (iv) Spencer shall be provided the opportunity to depose Dr. Applebaum after receiving her report; and (v) Spencer shall bear the cost of cancelling the examination if he does not provide Dr. Applebaum's office with 48 hours' notice.

SO ORDERED.

Dated: September 2, 2016         s/Mark A. Goldsmith
   Detroit, Michigan        MARK A. GOLDSMITH
       United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 2, 2016.

       s/Karri Sandusky
       Case Manager